

**REVISED 7/8/2020**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Certified as a true copy and issued as the mandate on Jul 07, 2020

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 19-70003

United States Court of Appeals
Fifth Circuit
**FILED**
July 7, 2020
Lyle W. Cayce
Clerk

WESLEY LYNN RUIZ,

        Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

        Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-5112

Before OWEN, Chief Judge, and WILLETT and OLDHAM, Circuit Judges.

PER CURIAM:\*

    Wesley Lynn Ruiz, a prisoner sentenced to death, seeks a certificate of appealability (COA) for his habeas petition. To succeed, Ruiz must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Having carefully reviewed the record and arguments of counsel, we conclude that Ruiz's arguments fail on procedural and substantive grounds. We thus deny his COA motion.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-70003

I

In 2008, a jury convicted Ruiz of murdering a police officer and sentenced Ruiz to death. At his Texas state court sentencing hearing, the prosecution called A. P. Merillat, a criminal investigator for the Huntsville Special Prosecution Unit, as an expert on prisoner classification. On direct examination, Merillat testified that Ruiz would receive a moderately restrictive classification if sentenced to life without parole, but that after ten years he could be promoted to a less restrictive classification "depending on his behavior." This testimony was indisputably incorrect; the Texas Department of Criminal Justice (TDCJ) had changed its policy in 2005, disallowing this exact reclassification. *See Estrada v. State*, 313 S.W.3d 274, 287 (Tex. Crim. App. 2010) (taking judicial notice of the TDCJ's policy change). And despite Ruiz's counsel's retention of an independent Texas prisoner-classification expert who testified at Ruiz's trial, neither counsel nor his expert identified Merillat's statement as erroneous for the jury.

Ruiz appealed to the Texas Court of Criminal Appeals (TCCA), which affirmed his conviction and sentence.[1] Then he filed a timely state habeas petition, quickly followed by a supplement to that petition. The former was denied on the merits, and the latter was dismissed as a subsequent habeas application without an exception to the successive-petition bar. *Ex parte Ruiz*, No. WR-78,129-01, WR-78,129-02 (Tex. Crim. App. Sept. 26, 2012) (finding the supplement an "abuse of the writ" (citing TEX. CODE CRIM. PROC. art. 11.071 § 5(a))).[2]

---

[1] The Supreme Court denied certiorari review. *Ruiz v. Texas*, 565 U.S. 946 (2011).
[2] The TCCA adopted the trial court's factual findings and legal conclusions, which the trial court developed after an evidentiary hearing. And, again, the Supreme Court denied certiorari review. *Ruiz v. Texas*, 569 U.S. 906 (2013).

No. 19-70003

So Ruiz filed a habeas petition in federal court, where for the first time he raised claims related to Merillat's testimony. Realizing his procedural hurdles, Ruiz immediately filed a motion to stay the federal proceedings so that he could exhaust his Merillat-related claims in state court with another habeas petition. The federal district court granted the stay. The TCCA dismissed Ruiz's second petition as abuse-of-the-writ; again, Ruiz ran afoul of the successive-petition bar without qualifying for an exception. *Ex parte Ruiz*, No. WR-78, 129-03 (Tex. Crim. App. Nov. 19, 2014) (citing TEX. CODE CRIM. PROC. art. 11.071 § 5(a)). So Ruiz resumed his federal habeas proceedings, urging relief on the merits and, in the alternative, a COA if his habeas claims were denied. The district court denied relief and didn't issue a COA. On appeal, Ruiz requests a COA from us, urging that his petition states valid habeas claims for relief including:

(1) knowing failure to correct false testimony;
(2) ineffective assistance of trial, initial habeas, and appellate counsel;
(3) unconstitutional police presence at trial;
(4) Texas's death penalty procedure is unconstitutional; and
(5) cumulative error.

II

Before a petitioner may appeal the dismissal of his federal habeas petition, he must "seek and obtain" a COA—there's no automatic right to appeal under our statutory habeas scheme. § 2253(c)(1); *see also Cardenas v. Thaler,* 651 F.3d 442, 443–44 (5th Cir. 2011) (expounding that we only have jurisdiction to consider whether a COA should issue when a district court first "rule[s] upon whether a COA is warranted"). A COA should only issue when the petitioner has substantially shown denial of a constitutional right. § 2253(c). How this requirement may be satisfied depends on whether the

3

district court rejected the petitioner's habeas claim on substantive or procedural grounds. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If the former, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* If the latter, the petitioner must show that jurists of reason would find it debatable whether (1) "the petition states a valid claim of the denial of a constitutional right" *and* whether (2) "the district court was correct in its procedural ruling." *Id.*

A

Ruiz first asserts that the state's failure to correct Merillat's testimony violated his constitutional rights. The district court dismissed all claims connected to Merillat's testimony on procedural grounds, so Ruiz must satisfy *Slack*'s two-pronged showing. 529 U.S. at 484. And because jurists of reason cannot debate whether the district court properly ruled that Ruiz's claim was procedurally barred—*Slack* prong two—our inquiry ends there. *See, e.g., Giesberg v. Cockrell*, 288 F.3d 268 (5th Cir. 2002) (denying a COA because the district court properly applied a procedural bar).

In 2005, the TDCJ promulgated a new policy ensuring that a prisoner sentenced for capital murder would never receive a prisoner classification below a certain level. In Ruiz's 2008 trial, Merillat incorrectly testified that capital murderers *could* be classified below that level after ten years in prison. In 2010, Ruiz filed his direct appeal with the TCCA. Before ruling on Ruiz's appeal, the TCCA decided *Estrada*, a case where Merillat had delivered the same incorrect testimony on prisoner classification that he had in Ruiz's trial. 313 S.W.3d at 274. The *Estrada* court took judicial notice that the TDCJ's prisoner-classification policy had changed, held that Merillat had testified

inaccurately in Estrada's trial, and remanded for a new punishment hearing. *Id.* at 287.

Ruiz wants a similar outcome despite being a dissimilar appellant. Ruiz did not raise any Merillat-related claims on direct appeal or in his first state habeas petition; the *Estrada* petitioner raised this issue from the get-go. *Id.* In fact, Ruiz didn't raise these claims until his federal habeas petition nearly three years after trial. Ruiz realized his error and returned to state court, attempting to exhaust his Merillat-related claims so he could proceed with them in his federal habeas proceeding. But the TCCA dismissed his petition, finding it barred by the no-successive-petition rule without exception. *Ex parte Ruiz,* No. WR-78,129-03 (citing TEX. CODE CRIM. PROC. art. 11.071 § 5(a)). Based on this holding, the district court concluded Ruiz's Merillat-related federal habeas claims were procedurally barred. This holding is not debatable by reasonable jurists.

We have been clear: Federal courts may not review constitutional questions when: (1) the last state court considering the claim expressly relies on state procedural grounds to dismiss; (2) the grounds are independent of the federal claim's merits; and (3) the grounds are an adequate basis for the federal court's decision. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). Because all three conditions are met here, rendering the district court's procedural ruling beyond debate, we deny Ruiz's COA.

As the first two prongs are clearly met,[3] we focus on whether the state court's holding is an adequate basis for the district court's procedural bar finding. We have consistently recognized Texas's abuse-of-the-writ doctrine as sufficient for this purpose. *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir.

---

[3] The TCCA's holding, based entirely on Article 11.071 § 5(a), is clearly independent from the federal claim's merits and relied on state procedural grounds.

5

2008) (holding this doctrine is "an independent and adequate state ground for . . . imposing a procedural bar"). Here, the TCCA explicitly dismissed Ruiz's habeas application as an abuse-of-the-writ—without addressing the merits—because his Merillat-related allegations failed to satisfy the requirements of Texas Code of Criminal Procedure Article 11.071 § 5(a). Because the Texas court properly applied the abuse-of-the-writ doctrine, the state court's statutory-bar holding was an adequate basis for the district court's procedural bar ruling.

Ruiz counters that the TCCA's decision was erroneous, and not an adequate basis for the district court's holding, because his claim qualified for a statutory exception to the abuse-of-the-writ doctrine. To be sure, Texas courts may consider the merits of any subsequent habeas petition filed after an initial application if the application specifically establishes that:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial . . . .

TEX. CODE CRIM. PROC. art. 11.071 § 5(a).

But none of these provisions fit Ruiz. He could have raised the Merillat-based claims in his earlier state habeas application, so the first statutory exception doesn't apply. Neither do the second or third because Ruiz's requisite "constitutional violation" falters at the outset. Ruiz argues that the state

violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose, post-*Estrada*, that Merillat's statement regarding prisoner classification was inaccurate. But he simply invokes *Brady* without specifying how the state's actions violated it. In any event, his *Brady* claim falls short.[4] There is no constitutional violation, a prerequisite to the second and third statutory exceptions.[5] Because none of § 5(a)'s statutory exceptions apply to Ruiz's claim, the Texas court properly barred it. Therefore, reasonable jurists cannot debate whether an adequate and independent state-law procedural ruling bars Ruiz's Merillat-based claims. They are barred. We deny a COA on these grounds.

B

Ruiz next argues that his trial, initial habeas, and appellate counsel all provided ineffective assistance—the first for failing to object to Merillat's incorrect testimony and the second and third for failing to raise his trial counsel's ineffectiveness. But, again, no reasonable jurist could debate that the district court properly found these claims procedurally barred—*Slack* prong two—and we decline to issue a COA. 529 U.S. at 484.

The district court ruled that Ruiz's ineffective assistance of trial counsel claim was procedurally defaulted because he failed to raise it in his direct

---

[4] We have never held that *Brady* requires the state to disclose inaccurate testimony months after trial when a subsequent case publicly establishes that similar testimony is inaccurate. And there is no evidence the state knew Merillat's testimony was inaccurate when Ruiz was tried. Regardless, *Estrada* was published six months before Ruiz's first habeas petition; he could have found this decision with reasonable diligence. When evidence is equally available to both the prosecution and defense, the defendant bears the responsibility of any failure to diligently investigate it. *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). Ruiz's own failure to discover and timely raise his Merillat-related claims in his first habeas petition cannot ground a *Brady* violation.

[5] Alternatively, Ruiz alleges his constitutional right to due process was violated by the state's presentation of Merillat's false testimony. *See Napue v. Illinois*, 360 U.S. 264 (1959). But Ruiz doesn't present any evidence that the prosecution actually knew Merillat's testimony was false, a *Napue* prerequisite, so his *Napue* claim is a non-starter. *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Kutzner*, 303 F.3d at 337 (requiring proof of actual knowledge).

appeal or initial state habeas proceeding. Ruiz argues that, though he did fail to raise this claim below, his procedural default should be excused because his initial habeas counsel was itself ineffective by failing to raise an ineffective assistance claim against his trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may [excuse] a prisoner's procedural default of a claim of ineffective assistance at trial."). For the reasons discussed below, Ruiz's initial-review counsel wasn't ineffective. In turn, the district court's procedural bar holding is not debatable.

Whether Ruiz's initial-review counsel was ineffective depends on whether his trial counsel was ineffective; if his trial counsel was not, then his initial-review counsel cannot be faulted for failing to raise a non-existent ineffective assistance of trial counsel claim. We look to the well-known two-prong *Strickland* standard to determine whether trial counsel's assistance was ineffective. *Martinez*, 566 U.S. at 14. The petitioner must show a deficiency in the performance of his counsel—that is, his counsel's aid "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984) (reinforcing that the petitioner must overcome the presumption that counsel's actions (or lack thereof) were within the wide range of professional norms). The petitioner must also show prejudice: But for counsel's error, the outcome of his trial would have been different. *Id.* at 694.

Ruiz argues that his trial counsel was ineffective for his "failure to object" to Merillat's incorrect testimony. But the alleged ineffective assistance is best framed as trial counsel's failure to *impeach* Merillat—either on cross examination or through Ruiz's own expert—for Merillat's misstatement. Reviewing this argument, we resolve Ruiz's claim on *Strickland* prong one, his counsel was not deficient, and therefore don't address prong two.

No. 19-70003

The Texas prison-classification system is complex. When relevant, attorneys often call expert witnesses to explain the schema's nooks and crannies. *See, e.g.*, *Garcia v. Stephens*, 757 F.3d 220, 222, 226–29 (5th Cir. 2014). Following suit, Ruiz's trial counsel hired an expert on this system to combat the State's expert, Merillat. Because trial counsel hired an expert to address this complex subject matter, and counsel was entitled to rely on this expert, counsel's failure to impeach Merillat's incorrect testimony relating to the expert's topic was not unreasonable. Though the expert failed to flag Merillat's erroneous testimony for trial counsel, this was the expert's failure, not counsel's, and therefore counsel's assistance was nonetheless adequate.

Our conclusion is largely predicated on counsel's right to rely on his expert witnesses when developing labyrinthine subject matter such as the voluminous and convoluted Texas prisoner-classification system. *See Murphy v. Davis*, 901 F.3d 578, 592 (5th Cir. 2018) ("[C]ounsel should be able to rely on [an expert] to alert counsel to additional needed information . . ."); *Smith v. Cockrell*, 311 F.3d 661, 676–77 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274, 124 (2004) ("Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment . . . and rule that his performance was substandard for doing so."). In fact, holding otherwise would apply an improper "subject-matter-expert" standard to counsel. *See Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016) (refusing to find counsel ineffective for relying on "reasonable expert evaluations" of evidence). Counsel's expert reviewed Merillat's testimony and testified at trial that he did not disagree with anything in it. **ROA.5093.** And Ruiz offers no evidence that trial counsel had any reason to doubt his expert's conclusion. *See Murphy*, 901 F.3d at 592 ("Without a red flag . . . it is too much to insist that counsel second-guess [his expert]."). As such, Ruiz cannot

9

"overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. . . . There are countless ways to provide effective assistance in any given case.").[6]

Reasonable jurists cannot debate that the district court correctly found Ruiz's ineffective assistance of trial, initial habeas, and appellate counsel claims procedurally barred. And *Martinez* doesn't excuse Ruiz's procedural default. So we decline to issue a COA on this ground as well.

C

Ruiz next claims he was denied the right to a fair and impartial trial because there were at least ten, and possibly up to fifty, uniformed off-duty police officers in the courtroom gallery during Ruiz's trial's punishment phase. The district court denied relief on the merits, finding that because the Supreme Court hasn't established firm standards for gallery spectator conduct, the TCCA's decision to deny habeas relief on these grounds was not unreasonable under 28 U.S.C. § 2254(d). Section 2254(d) only allows a district court to grant habeas for a claim adjudicated on the merits in state court if the decision was (1) "contrary to, or involved an unreasonable application of, *clearly established* Federal law, as determined by the Supreme Court of the United States; or . . . [(2)] was based on an unreasonable determination of the facts . . . ." § 2254(d) (emphasis added). When the district court denies habeas on the merits, as here, and the petitioner moves for a COA from us, as here, he "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[6] Ruiz argues his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel on direct appeal. But even assuming this assertion is properly before us, see *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017), this contention similarly falters because trial counsel was not ineffective.

constitutional claims debatable or wrong" for the COA to issue. *Slack*, 529 U.S. at 484.

### 1

Ruiz doesn't demonstrate that it's debatable whether the district court properly applied "clearly established Federal law." § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 380–82 (2000) (stating that the Supreme Court has only clearly established precedent if it has "broken sufficient legal ground to establish an asked-for constitutional principle"). It is undisputed that the police officers in the gallery did not attend Ruiz's trial as part of their government duties, unlike in *Holbrook v. Flynn*. 475 U.S. 560, 569, 572 (1986) (considering when the "courtroom security force" may generate impermissible inherent prejudice). Instead the officers' conduct here was "neither clearly private nor clearly state action." *Jones v. Davis*, 890 F.3d 559, 569 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 795 (2019). Because the Supreme Court has "not affirmatively resolve[d]" whether "*Flynn* might . . . apply to claims involving purely spectator conduct," the law Ruiz seeks to invoke isn't clearly established. *Id.*; *see also Carey v. Musladin*, 549 U.S. 70, 76 (2006) ("In contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of [private spectator conduct] is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial."). The district court got it right; no reasonable jurists would debate the district court's refusal to grant habeas on this ground.

### 2

And Ruiz doesn't show that the district court made an unreasonable determination of the facts. § 2254(d). To start, Ruiz never argues that the district court's factual determinations were unreasonable. He merely notes that the district court didn't pinpoint how many officers were in the gallery

during sentencing and opines that, if the court had made this factual finding, it could have had an impact. But this amounts to a conclusory allegation that the district court didn't find *enough* facts, not that its factual determinations were *unreasonable*. And, because our review is "limited to the record that was before the state court that adjudicated the claim on the merits," this line of argument falls short. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).[7] Because reasonable jurists could not debate the district court's conclusions on Ruiz's fair-trial claim, we decline to issue a COA.

D

Ruiz next claims that Texas's death penalty procedure violates the Fifth, Sixth, Eighth, and Fourteenth Amendments. "Under Texas law, the jury must consider two special issues before the death penalty is imposed on a capital defendant"; an "aggravating" special issue and a "mitigation" special issue. *Druery v. Thaler*, 647 F.3d 535, 542 (5th Cir. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 37.071(2)(b)(1)). And pursuant to Texas's "12/10 Rule," "the trial court was [] required to instruct the jury that it must have at least 10 'no' votes to answer 'no' on the aggravating special issue, and at least 10 'yes' votes to answer 'yes' on the mitigation special issue—either of which answers would result in a life sentence, not death." *Id.* (citing TEX. CODE CRIM. PROC. § 37.071(2)(g)). Ruiz's trial court adhered to this procedure, and Ruiz was

---

[7] Moreover, Ruiz specifies no "meaningful facts or evidence" that would make the district court's characterization of the facts unreasonable. *Sparks v. Davis*, 756 Fed. App'x 397, 403 (5th Cir. 2018) (unpublished). Most notably, he points to no evidence that the jurors were influenced by the presence of officers in the gallery during the trial's punishment phase. *Jones*, 890 F.3d at 571 (finding the mere presence of uniformed officers insufficient to support an inherent prejudice claim where "the record before [it did] not suggest the police presence intimidated the jury or disrupted the fact-finding process in any way"). And, in the alternative, he fingers no evidence showing that "bedlam reigned at the courthouse" or that the police officers created a "carnival atmosphere." *Cf. Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) (granting habeas when the "trial judge did not fulfill his duty to protect [petitioner] from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom").

sentenced to death. The TCCA rejected Ruiz's contentions that this procedure violated the Constitution, and the district court agreed on the merits.[8] Because our precedent forecloses Ruiz's contentions, and therefore reasonable jurists could not debate the district court's substantive determination, we deny a COA here as well.[9] *Druery*, 647 F.3d at 543 (declining to issue a COA on this exact claim because "no clearly established federal law called into doubt the Texas death penalty statute" (cleaned up)).

E

Finally, Ruiz contends that the cumulative effect of the alleged constitutional violations he's suffered should be enough to warrant relief. However, "[m]eritless claims . . . cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996).

\* \* \*

Having carefully reviewed the record and arguments of counsel, we hold that Ruiz's motion for a COA is DENIED. Ruiz's counsel (J. Steven Bush) has filed a motion to withdraw, and that motion is GRANTED.[10] The motion for appointment of counsel is carried with the case.

---

[8] The district court found a number of Ruiz's underlying contentions procedurally barred but addressed their merits in the alternative. We review the court's resolution on the merits.

[9] The Supreme Court recently held "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). But "the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a *conviction*," not a sentence. *Id.* (emphasis added). In other words, a jury must be unanimous on the *factfinding* underlying a sentence, but not on the sentence actually imposed. *See Ring v. Arizona*, 536 U.S. 584, 609 (2002) (finding a jury vote required for the "factfinding necessary" for a sentence but not the sentence itself). Here, Ruiz's jury was unanimous on the factfinding underlying his conviction and sentence, including the special fact issues at the sentencing phase. Because Ruiz's conviction meets the Sixth Amendment's unanimity requirement, *Ramos* is of no moment.

[10] Ruiz's counsel filed this motion during the pendency of this COA decision. We grant it here, as opposed to in a separate order, out of fairness and efficiency concerns.